## OHIO POWER CO. v. NATIONAL LABOR RELATIONS BOARD.

No. 8393.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1940.

John G. Ketterer and H. C. Pontius, both of Canton, Ohio (Lynch, Day, Pontius & Lynch, of Canton, Ohio, on the brief), for petitioner.

Philip G. Phillips, of Cincinnati, Ohio (Charles Fahy, Robert B. Watts, Laurence A. Knapp, Bertram Edises, and Hilda D. Shea, all of Washington, D. C., on the brief), for respondent.

Frank T. Bow, of Canton, Ohio, for intervenor Topco Employees Ass'n.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

The petitioner asks that an order of the National Labor Relations Board be set aside, and the Board requests that its order be enforced. The Board found that the petitioner had committed various unfair labor practices in violation of the National Labor Relations Act, Title 29, § 151 et seq., U.S.C., 29 U.S.C.A. § 151 et seq. The petitioner is a public utility engaged in the generation, transmission and distribution of electrical power, and its activities are intimately related to interstate commerce. The Board found that petitioner, by making statements disparaging to the union, by threats of discrimination, and by the use of a labor spy, had interfered with the exercise of the employees' right to form an organization of their own choosing, and had dominated and interfered with the formation and administration of and contributed support to a company organization known as Topco Employees' Association. Cease and desist orders were issued and the petitioner was ordered to withdraw recognition from and to disestablish Topco as a bargaining representative of its employees.

At the outset of the hearing in this court, counsel for both parties agreed that a question of fact only was presented. The case presents no unusual aspects. Neither petitioner nor its employees used violence or physical intimidation in their controversies. Upon all but one of the various issues there is substantial evidence to support the finding of the Board. Its conclusion upon those issues, therefore, is binding upon this court.

The phase of the record which requires discussion is presented by the finding that

81

the petitioner hired Dale Stickrath, a so-called "labor spy," and therefore was guilty of labor espionage in violation of § 8 (1) of the Act.

The employment of undercover operatives or missionaries to spy upon union affairs is a violation of the statute. National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 75, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Fruehauf Trailer Co., 301 U.S. 49, 54, 55, 57 S.Ct. 642, 630, 81 L.Ed. 918, 108 A.L.R. 1352; National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 251, 252, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599. The situation presented in the cited cases is that of the employment by industrial concerns of outside investigating agencies to spy and report upon union activities, and the general maintenance of surveillance over union meetings. The Board alleges that the case falls within this rule. However, the only instance of espionage relied upon in the findings of the Board arises out of the employment of Stickrath.

Stickrath worked in petitioner's service division from March, 1936, at least up to the time of the hearing. Previously he had been employed by the Burns Detective Agency, from 1929 to 1936, and during that time had acted as manager of the Pittsburgh office of the agency for three years. Around 1922 or 1923 he worked in petitioner's service division for two or three years in Coshocton, Ohio, under Bivenour, superintendent of the service division, and Dolan, general manager of the service division had known members of Stickrath's family for years. His application for employment made in 1936 showed that he had been employed by the detective agency, and Bivenour was aware of this fact. Stickrath was known among some of the employees as a "G man." He did meter-rebuilding work for petitioner in and around New Philadelphia, Ohio, in the meter installation crew, and worked in some six Ohio cities, during which time he became affiliated with the C. I. O. In the union meetings he disparaged unionism, saying that he did not see where the union had done the men any good. He was elected chairman of the ways and means committee of the local union, but subsequently joined Topco. The Board does not find that he made reports to the petitioner, nor does it make any essential finding as to what, if anything, Stickrath accomplished in the direction of espionage.

During the period of his employment in Pittsburgh, Stickrath at least once negotiated with an industrial concern on behalf of the Burns Agency for a contract to do undercover work. The position with petitioner paid Stickrath less than his salary at the Burns Agency, which at the time was a drawing account of five dollars a day. However, he had been demoted from the managership of the Pittsburgh office prior to seeking employment with petitioner, and at that time was on a day-to-day basis with the Burns Agency. It is a fair inference that he sought employment with petitioner because he was dissatisfied with his position in the Burns office. Stickrath was an evasive witness, but as he was called by the Board, and not by the petitioner, no imputation of concealment can be made against the petitioner because of Stickrath's failure to remember things which he could hardly have forgotten. It is not shown that petitioner authorized any undercover work to be done by Stickrath. While he visited the Burns Agency at least three times during his employment, and talked with the manager there on one occasion concerning labor troubles at the plant, there is no evidence to show that petitioner authorized, or was even aware of, these visits. There is no evidence whatever that Stickrath reported to the petitioner on his union activities.

The employment by an industrial plant of a former detective, with knowledge of his past business connections and experience, may arouse a suspicion of the nature of that employment. But to sustain a finding that petitioner employed a labor spy, the evidence must amount to more than mere suspicion and conjecture. The fact that Bivenour knew of the nature of Stickrath's former employment is the only evidence connecting Stickrath's alleged anti-labor activity with petitioner. There is no evidence that petitioner hired Stickrath to do undercover work, or authorized him to do such work. The petitioner was entitled to a ruling in its favor upon the charge of espionage.

The order of the Board is modified by striking therefrom paragraph 1(b), and

as so modified, the order will be enforced. The petition to set aside the order is dismissed.